UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARTER PAGE,

               Plaintiff,

-v-

OATH INC., AND BROADCASTING
BOARD OF GOVERNORS,
               Defendants.

Civil Action No.:   17-CV-06990-LGS

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT BROADCASTING BOARD OF GOVERNORS' MOTION TO DISMISS

The Plaintiff,
By:  /s/ Carter Page
Carter Page
c/o Global Energy Capital LLC
590 Madison Ave., 21st floor
New York, NY 10022
Phone (212) 537-9261
Fax     (212) 537-9281
cpage@globalenergycap.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/19/18

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT, FACTUAL BACKGROUND AND THE USG'S

MOTION ................................................................................................................ 1

II.   PLAINTIFF HAS ESTABLISHED CLEAR SUBJECT MATTER

JURISDICTION: SOVEREIGN IMMUNITY AND ABUSE OF PROCESS ...................... 6

III.   PROPERLY STATED CLAIMS ................................................................. 13

   A.   BBG played the essential role in enabling RFE's illegal actions ................................ 13

     1.   A duplicitous "Cutout" in illicit election influence campaign ................................ 13

     2.   The BBG Board had vested interests and clear conflicts in 2016 ............................ 16

   B.   Defamation: A primary alleged cause of the abuse of process in the FISC ............... 17

   C.   Terrorism ................................................................................................................ 17

   D.   Tortious Interference: Among alleged effects of abuse of process in the FISC ........ 22

IV.   MORE ACTUAL MALICE IN DOJ'S PLEADING ON BEHALF OF BBG .......... 24

V.   CONCLUSION ................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Beauharnais v. Illinois*, 343 U.S. 250, 292 (1952) ..................................................... 20

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 .................................................... 6, 16

*Boumediene v. Bush*, 553 U.S. 723 (2008) ............................................................ 2

*Cianci v. New Times Publishing Co.*, 639 F.2d 54, 60-61 (2d Cir.1980) ..................................... 17

*Cohen v Bean LLC et al*, 18-cv-00183 (S.D.N.Y., Jan. 9, 2018) .................................................... 2

*Condit v. Dunne*, 317 F. Supp. 2d 344 (S.D.N.Y. 2004) ............................................ 17

*D. F. ex rel. Finkle v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 386 F. Supp. 2d 119, 125

   (E.D.N.Y. 2005) ............................................................ 21

*D.F. v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 180 F. App'x 232 (2d Cir. 2006) ..................... 21

*Flowers v. Carville*, 310 F.3d 1118, 1128 (9th Cir.2002) ............................................ 17

*Fridman et al v. Bean LLC et al*, 17-cv-02041, (D.D.C., Oct. 3, 2017) ........................................ 1

*Furman v. Georgia*, 408 U.S. 238 (1972) ............................................................ 17

*Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996) ................... 7

*Gubarev et al v. Buzzfeed, Inc. et al*, 17-cv-60426 (S.D. Fla., Feb 28, 2017) ................................ 1

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004). ................................................................. 18

*Long Island Radio Co. v. N.L.R.B.*, 841 F.2d 474, 477 (2d Cir. 1988) ........................................ 4

*McKithen v. Brown*, 481 F.3d 89, 95-96 (2d Cir. 2007) ................................................ 7

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 305 (1964) ................................................ 2

*Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 616 (5th Cir. 2004) .................................... 21

*R.A.V. v. City of St. Paul, Minn.*, 505 U. S. Reports 377, 388 (1992) .......................................... 21

*Ralis v. RFE/RL, Inc.*, 770 F.2d 1121, 1131 (D.C. Cir. 1985) ...................................... 15

*Reynolds v. Pegler*, 223 F.2d 429 (2nd Cir.), *cert. denied*, 350 U.S. 846 (1955) .......................... 25

*Ringler*, 80 Cal.App. 4th at 1180, 96 Cal.Rptr.2d 136 .................................................. 17

*Roth v. Farmingdale Pub. Sch. Dist.*, No. 14-CV-6668 (JFB) (ARL) (E.D.N.Y. 2017) .............. 21

*Skilling v. United States*, 561 U.S. 358 (2010) ............................................................ 4

*Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 102 (1998) ...................................... 7

*United States v. U.S. District Court*, 407 U.S. 297 (1972) ............................................... 5

*Vaughn v. Rosen*, 484 F.2d 820, 823-25 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977 (1974). ....... 7

*Virginia v. Black*, 538 U. S. Reports 343, 359-60 (2003) ................................................ 21

*Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) ...................................... 4

## Statutes

18 U.S.C. § 1001 ........................................................................................ 2

18 U.S.C. § 1341 ........................................................................................ 1

18 U.S.C. § 1346 ...................................................................... 4, 14, 17, 21

18 U.S.C. § 2331(5) ................................................................... 5, 6, 18, 19

18 U.S.C. § 371 ......................................................................................... 1

18 U.S.C. § 798 ..................................................................... 10, 11, 12, 13, 23

18 U.S.C. § 951 ......................................................................................... 1

22 U.S.C. § 1461–1a(a) ............................................................................ 13

22 U.S.C. § 6202 ..................................................................................... 19

22 U.S.C. § 6207 ..................................................................................... 14

22 U.S.C. § 6213 ..................................................................................... 14

22 U.S.C. §§ 1461, 1461-la (2012) ............................................................. 3

28 U.S.C. § 2675 ..................................................................................... 24

28 U.S.C. § 2680(h) .................................................................................. 4, 5, 7, 13, 22

42 U.S.C. § 1983 .......................................................................................... 15

5 U.S.C. § 552 .............................................................................................. 7

5 U.S.C. § 552a ............................................................................................ 7

50 U.S.C. § 1801(b) .................................................................................... 4, 13

Pub. L. No. 112-239, § 1078, 126 Stat. 1632, 1957-59 ("NDAA 2013") ....................... 4

## Rules

Fed. R. Civ. P. 1 .......................................................................................... 25

Fed. R. Civ. P. 8(a)(2) ................................................................................... 6

Fed. R. Civ. P. 8(b)(6) ................................................................................... 25

Rule 13, U.S. Foreign Intelligence Surveillance Court Rules of Procedure ............... 11

## Regulations

28 C.F.R. § 16.5(e)(l)(i)-(iv) ......................................................................... 7

## Constitutional Provisions

United States Constitution, Article I, Section 8 ................................................. 24

United States Constitution, Article II, Section 1 ................................................ 1

United States Constitution, Article III, Section 2 .............................................. 6

United States Constitution, Fourteenth Amendment ........................................... 4

United States Constitution, Fourth Amendment ................................................ 4

Pro Se Plaintiff Carter Page, Ph.D. ("Dr. Page") respectfully submits this response in opposition to the memorandum of law ("Memo.") [Dkt. No. 29] presented by Defendant the Broadcasting Board of Governors ("BBG") by its attorney, Joon H. Kim ("Mr. Kim"), Acting United States Attorney for the Southern District of New York on December 8, 2017.

## I.   PRELIMINARY STATEMENT, FACTUAL BACKGROUND AND THE USG'S MOTION

As briefly outlined in Dr. Page's complaint ("Compl.") [Dkt. No. 1], he officially became the principal associated pre-election domestic propaganda target for Article II institutions of the U.S. Government ("USG") with the libelous article by BBG's grantee Radio Free Europe ("RFE"): "Report: U.S. Intelligence Officials Examining Trump Adviser's Russia Ties" (the "RFE Republication Report").  See Compl. Exh. 2.  By falsely and publicly identifying Dr. Page in the U.S., Europe and worldwide as the main accomplice in the most prominent crime story in recent history and simultaneously mischaracterizing the libelous articles as primarily stemming from slightly more legitimate leakers within USG agencies rather than the opposition political research consultant Christopher Steele ("Mr. Steele"), BBG and RFE played essential roles in the USG's black propaganda campaign by branding him as a subject of completely outrageous criminal allegations instigated by earlier excerpts from Mr. Steele's final report[1] (the "Dodgy Dossier"). 18 U.S.C. § 371; 18 U.S.C. § 951; 18 U.S.C. § 1341. Albeit less egregious than the torts by the Defendants in this civil action, unflattering revelations have continued to flow from pending Dodgy Dossier cases including in many U.S. District Courts as well as other jurisdictions (the "Dodgy Dossier Cases").[2]

---

[1]   Full document revealed in: Ken Bensinger, Miriam Elder and Mark Schoofs, "These Reports Allege Trump Has Deep Ties To Russia," Buzzfeed, January 10, 2017. https://www.buzzfeed.com/kenbensinger/these-reports-allege-trump-has-deep-ties-to-russia

[2]   Among others, see: *Gubarev et al v. Buzzfeed, Inc. et al*, 17-cv-60426 (S.D. Fla., Feb. 28, 2017); *Fridman et al v. Bean LLC et al*, 17-cv-02041 (D.D.C., Oct. 3, 2017); *Bean LLC d/b/a*

Dr. Page spent November 2, 2017 testifying before the U.S. House Permanent Select

Committee on Intelligence in Washington ("HPSCI").  Memo. p. 1-2.  His appearance before

HPSCI was largely precipitated by the preposterous criminal fabrications that the Defendants in

this case illegally released to the American public about him in September 2016, based on the

Dodgy Dossier (Compl. ¶ 53, 74, 79, 81, 95-96).  The U.S. Department of Justice ("DOJ") has

been leading related investigations for many months but has been slow to investigate or

acknowledge the life-threatening terrorizations and other related torts against Dr. Page.

Underscoring the far greater relevance to both this case and 2016 election interference, HPSCI's

Chairman recently wrote the following to Deputy Attorney General Rod Rosenstein ("Mr.

Rosenstein") regarding discovery related primarily to the Dodgy Dossier:

> "Unfortunately, DOJ/FBI's intransigence with respect to the August 24 subpoenas is part of a broader pattern of behavior that can no longer be tolerated....**at this point it seems the DOJ and FBI need to be investigating themselves.**"[3]

The U.S. Senate Judiciary Committee Chairman has also recently referred Mr. Steele to DOJ

"for investigation of potential violations of 18 U.S.C. § 1001 for false statements investigators

have reason to believe Steele made about the distribution of claims contained in the dossier."[4]

___

*Fusion GPS v. Defendant Bank and Permanent Select Committee on Intelligence,* 17-cv-02187 (D.D.C., Oct. 20, 2017); *Cohen v Bean LLC et al*, 18-cv-00183 (S.D.N.Y., Jan. 9, 2018).
[3]   Devin Nunes letter to Rod Rosenstein, December 28, 2017.
https://www.scribd.com/document/368046067/Devin-Nunes-letter-to-Rod-Rosenstein Justice Brandeis has correctly observed that, "sunlight is the most powerful of all disinfectants." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 305 (1964).  At the time of this filing, DOJ's disinfecting process related to the torts against Mr. Trump, Dr. Page and the U.S. Constitution in 2016 remains at an early stage.  In the interim, "To hold that the political branches may switch the constitution on or off at will would lead to a regime in which they, not this court, 'say what the law is'." *Boumediene v. Bush*, 553 U.S. 723 (2008).
[4]   https://www.grassley.senate.gov/news/news-releases/senators-grassley-graham-refer-christopher-steele-criminal-investigation

Yesterday, U.S. House of Representatives Judiciary Committee member Matthew Gaetz made the following statement regarding a 4-page classified document summarizing the alleged "clear examples of bias and conflicts of interest" related to the Dodgy Dossier:

> "The House must immediately make public the memo prepared by the Intelligence Committee regarding the FBI and the Department of Justice. The facts contained in this memo are jaw-dropping and demand full transparency. There is no higher priority than the release of this information to preserve our democracy."[5]

With the libelous RFE Republication and the RFE Pre-Election Report prior to the 2016 election, state-sponsor BBG's credibility and that of its funding recipient RFE as sources of reliable information have similarly been damaged for closely related reasons, testing nearly all fundamental legal bases of these respective organizations following the recent decision to "make available, in the United States… materials disseminated abroad". See 22 U.S.C. §§ 1461, 1461-1a (2012).  Amidst heavy Congressional pressure, further USG evidentiary disclosure slowly continues.  Subsequent development of the early legal analysis presented here and the timing of amendments to Compl. thus remain partially subject to the pace of future USG disclosures regarding the full truth about what actually happened prior to the 2016 election.  The outline included, intra, thus represents the Pro Se Plaintiff's current position and an early sample of some of the legal authorities that support it in reference to the main themes raised by Mr. Kim in the USG's Memo:

**A. BBG as defendant** - Despite the USG's legal cover of the front organization BBG, associated statutes offer several relevant bases for resolving any ineffectiveness and incompetence as clearly demonstrated by their grantee RFE in 2016.  22 U.S.C. § 6207(d).[6]  Recent changes with

---

[5]   https://gaetz.house.gov/media/press-releases/congressman-matt-gaetz-issues-statement-demanding-intelligence-committee
[6]   § 6207(d): "If the Chief Executive Officer determines at any time that RFE/RL, Incorporated is not carrying out the functions described in this section in an effective and economical manner, the Board may award the grant to carry out such functions to another entity."

3

Pub. L. No. 112-239, § 1078, 126 Stat. 1632, 1957-59 (the "NDAA 2013") enabled a "scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. Specifically, the collaborative dishonest arrangement established between BBG, RFE and Oath Inc.'s ("Oath") subsidiary Yahoo allegedly represented, "fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived." *Skilling v. United States*, 561 U.S. 358 (2010). BBG's and RFE's illicit remuneration of domestic and international marketing services online for the 2016 Yahoo Report [Compl. Exh. 1] through multiple USG-funded web links to the Co-Defendant Oath internet site meets the standards of such a kickback scheme.[7]

**B. Subject matter jurisdiction – sovereign immunity and abuse of process** – In a response to Mr. Kim dated October 18, 2017 as summarized in a subsequent letter to the Court [Dkt. No. 24], Dr. Page identified the express statutory authority allowing him to bring his specific claims against the Board, "as Congress has granted it." *Long Island Radio Co. v. N.L.R.B.*, 841 F.2d 474, 477 (2d Cir. 1988). Though Congress has generally not waived the USG's sovereign immunity for libel as an exception to torts, explicit protections of law "shall apply to any claim arising… out of… abuse of process". 28 U.S.C. § 2680(h). The clear violations of many Constitutional tenets and fundamental judicial procedures associated with due process helps further illustrate part of the damage of defamatory reports including those by BBG's grantee RFE against Dr. Page. Associated false media reports portraying him as an "Agent of a foreign power" [50 U.S.C. § 1801(b)] are widely believed to have helped enable illicit influence on the Foreign Intelligence Surveillance Court ("FISC"). U.S. Const., Fourth and Fourteenth

---

[7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation mark omitted)).

Amendments.  Expected future disclosure of Dr. Page's dreadfully illegitimate FISA warrant applications[8] should continue to make this abuse of process exception in 28 U.S.C. § 2680(h) even more explicitly obvious. "The price of lawful public dissent must not be a dread of subjection to an unchecked surveillance power." *United States v. U.S. District Court*, 407 U.S. 297 (1972).

**C. Terrorism and Federal tort** - The USG waged an unprecedented, targeted, state-sponsored propaganda operation against Dr. Page and the Trump Campaign amidst the 2016 U.S. election following Congress's authorization of BBG propaganda for domestic audiences.  Common law has not been entirely clear on these types of emerging threats to American democracy that the Plaintiff was among the first to suffer amidst these historic torts.[9]  Given subsequent death threats (Compl. ¶ 85), the outcome of the libel committed against Dr. Page clearly displays the requisite elements of the statutory definition of domestic terrorism: "activities that involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State" and "appear to be intended…to intimidate or coerce a civilian population… to influence the policy of a government by intimidation or coercion; or… to affect the conduct of a government by… assassination… and… occur primarily within the territorial jurisdiction of the United States." See 18 U.S.C. § 2331(5).[10]

Far more modest, local and small-scale social media pranks have led to affirmative decisions in otherwise equivalent domestic terrorism cases, perhaps most notably in the practice of

---

[8]  "FBI Reportedly Monitored Trump Campaign Adviser For Russia Contacts," Radio Free Europe / Radio Liberty, April 12, 2017. https://www.rferl.org/a/fbi-monitored-trump-campaign-adviser-russia-contacts-washington-post-reported/28424682.html
[9]  For further legal and evidentiary basis related to these torts, see also Dkt. No. 27, p. 22-25.
[10]  Whereas BBG's grantee RFE broadcast the defamatory reports nationwide to all fifty states amidst the first Presidential election in which domestic propaganda had been authorized by Congress, this libel and other acts also further violate the criminal laws of many states. Compl. ¶ 3-4.

"swatting" – the false reporting of serious law enforcement events.  As with the insinuation that Mr. Steele might be a legitimate U.S. intelligence official rather than a political research consultant seeking to damage an opposing political campaign, swatting tactics may consist of a diverse and creative range of false identity pranks related to law enforcement operations that meet each requisite element of the definition of domestic terrorism. 18 U.S.C. § 2331(5).  In these more benign and little-known swatting cases, defendants have been held accountable by courts when they, for example: "…fraudulently obtain the personal identifiers of certain telecommunication employees and impersonate the customer of the targeted telephone number, impersonate the telecommunications employee capable of initiating changes to the targeted telephone number…"[11]

Generally, a plaintiff is not required to detail all the facts upon which he bases his claim. Fed. R. Civ. P. 8(a)(2). Rather, 8(a)(2) requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555-56.  However, "Rule 8(a)(2) still requires a 'showing' rather than a blanket assertion, of entitlement to relief." *Id.* at 555 (citation omitted). "Factual allegations must be enough to raise [plaintiff's] right to relief above the speculative level, on assumption that all of the allegations in the complaint are true." *Id.*  Dr. Page's Compl. rises far above that level.

## II.   PLAINTIFF HAS ESTABLISHED CLEAR SUBJECT MATTER JURISDICTION: SOVEREIGN IMMUNITY AND ABUSE OF PROCESS

Article III of the Constitution confines the "judicial power" of the United States to "cases" and "controversies." U.S. Const. art. III, § 2.  Federal courts "have always taken this to mean cases and controversies of the sort traditionally amenable to and resolved by the judicial

---

[11]   See for example, "Individual Pleads Guilty in Swatting Conspiracy Case: Defendant Faces 13 Years in Federal Prison," U.S. Attorney's Office, Northern District of Texas, January 29, 2009. https://archives.fbi.gov/archives/dallas/press-releases/2009/dl012909.htm

process." *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 102 (1998).  In weighing whether

the burden of establishing, by a preponderance of the evidence, that subject matter jurisdiction

exists, a district court may refer to evidence outside the pleadings. *McKithen v. Brown*, 481 F.3d

89, 95-96 (2d Cir. 2007).  Over the four months since Dr. Page filed his Compl. in September

2017, a veritable avalanche of additional pertinent evidence has further strengthened and

confirmed Dr. Page's pleadings.  For example, see the Dodgy Dossier Cases.  "In any such

proceeding, no presumptive truthfulness attaches to the complaint's jurisdictional allegations;

rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional

facts." *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)

(citations omitted), aff'd, 125 F.3d 844 (2d Cir. 1997).  The alleged untruthfulness attached to

DOJ's allegations in the illegitimate FISA warrant issued against Dr. Page and related abuse of

process in 2016 based on the Dodgy Dossier helps to directly fulfill that burden.  Although

Congress has not waived the sovereign immunity of the USG for most libel and tortious

interference as exceptions to torts (Memo. p. 4-8), the protections of the law "shall apply to any

claim arising… out of… abuse of process".  See 28 U.S.C. § 2680(h).

In letters to DOJ and the FBI dated May 21, 2017, made pursuant to the provisions of the

Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, Dr. Page

requested information related to the alleged warrant issued by the FISC.  Several follow-up

pieces of correspondence from Dr. Page have sought expedited treatment in accordance with

DOJ regulations and 28 C.F.R. § 16.5(e)(l)(i)-(iv) but over 240 days later, no relevant

information has been provided by the USG in response.  "This lack of knowledge by the party

seeking disclosure seriously distorts the traditional adversary nature of our legal system[]."

*Vaughn v. Rosen*, 484 F.2d 820, 823-25 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977 (1974).

7

The secret nature of the FISC has thus far prevented any immediately conclusive analysis prior to the Compl. filed in this action, but evidence from civil case adjudication has demonstrated that: "judges frequently exposed to newspaper coverage which criticizes frivolous lawsuits and large damage awards may hold views on appropriate punishment of defendants that are different from the views of those not exposed to such coverage".[12] The wide-scale news coverage related to the otherwise-ludicrous Dodgy Dossier, of which Dr. Page was the first direct target in 2016 and BBG's grantee RFE played the lead broadcasting role among U.S. state-sponsored media organizations beginning with the RFE Republication, can similarly be reasonably assumed to have provided some further false legitimacy and other encouragement to the alleged abuse of process before the FISC.[13]

As the most prominent USG-funded news authority via cutout BBG, unjustifiable perceptions of increased legitimacy added by RFE's libelous reports as a federally-linked broadcaster has continued to lend false credence to the otherwise outrageously fraudulent allegations. In turn, other U.S. and global media organizations eventually followed in the wake of the defamatory early reports by BBG-sponsored and Oath media brands. The associated clear violations of the entire list of requisite procedures related to due process as suggested by the late

---

[12]   Claire S. H. Lim, "Media Influence on Courts: Evidence from Civil Case Adjudication," *American Law and Economics Review*, 2015, 17(1), pp. 87-126.

[13]   See also: "Consumption of various forms of crime-related media was regressed on four goals of criminal sentencing (punishment, incapacitation, deterrence, and rehabilitation) using multinomial logistic regression. The results suggest that consumption of television news and crime-based reality programs increased the odds of selecting punishment as the most important goal of criminal sentencing as opposed to rehabilitation. The more hours of television watched, irrespective of genre, the more likely respondents were to support punishment, deterrence, or incapacitation rather than rehabilitation. These results hold even after controlling for various sociodemographic characteristics and experiences with crime such as fear, past victimization, and prior arrests." Jared S. Rosenberger and Valerie J. Callanan, "The Influence of Media on Penal Attitudes," *Criminal Justice Review*, 36(4), p. 435 (pp. 435-455).
http://www.d.umn.edu/~jmaahs/Crime%20and%20Media/pdf%20files/Summer%202012/media%20on%20penal%20attitudes.pdf

2nd Circ. Chief Judge Henry Friendly[14], helps to further illustrate the probable impact of

defamatory reports including those by the USG's cutout and BBG's grantee RFE against Dr.

Page given the similar influence that associated media reports may carry with the FISC.  As

exhibited across each of these 10 points, future disclosure regarding Dr. Page's FISA warrant

applications should continue to make each of these realities even more imminently clear:

1.        **An unbiased tribunal.** As the USG's propaganda arm most active in damaging Dr.

Page and influencing last year's election through the libelous storyline written on September 23,

2016, the misrepresentations of BBG's grantee RFE mark a broad array of severe biases in this

case.  This unquestionably corresponds with the USG's allegedly adversarial positions for

political purposes as presented in the FISC prior to the election.[15]

2.        **Notice of the proposed action and the grounds asserted for it.** Albeit not delivered

directly to Dr. Page, the only USG notice of these alleged civil rights abuses consisted of

preliminary media reports about the wiretap, computer hacking and other related illicit

surveillance activities by the U.S. Intelligence Community ("IC") came directly in the form of

---

[14]     Peter Strauss, "Due Process," Legal Information Institute, Cornell Law School.
https://www.law.cornell.edu/wex/due_process
[15]     Given Mr. Trump's similar peace-seeking inclinations towards U.S.-Russia relations that Dr.
Page has also consistently reflected as a former U.S. Naval Officer and as a private citizen with
his scholarly writings, military service and private sector activities throughout his career, much
of these strong biases and complete misunderstandings against Russia reflect the new
McCarthyism which has burgeoned over the past year. For historic precedent, see Stephen
William Smith, "Policing Hoover's Ghost: The Privilege for Law Enforcement Techniques,"
*American Criminal Law Review*, Vol. 54, Issue 1 (Winter 2017), 234 (pp. 233-276). Citing intra
note 3, 26 Kenneth W. Graham, Jr., Federal Practice Procedure § 5663, Westlaw (1st ed. 2016).
"The seeds from which the [law enforcement] privilege would grow had already been planted in
the soil of executive privilege and fertilized with the manure of McCarthyism."  For more recent
developments, see Robert Parry, "The McCarthyism of Russia-gate: Civil-liberties nightmares
about the Surveillance State are coming true," Consortium News, May 7, 2017.
https://consortiumnews.com/2017/05/07/the-mccarthyism-of-russia-gate/

BBG-funded RFE reports.[16] Amidst meetings with the FBI, the details of which were also leaked

to the media,[17] and related reports of FBI operations by RFE (the "RFE FISA Disclosure")[18], Dr.

Page asked the agents about it in March 2017.  They offered no confirmation that the IC's severe

violations of his privacy as authorized by the FISC had indeed even been consummated.

3.        ***Opportunity to present reasons why proposed action should not be taken.*** When first

raising these claims administratively, Dr. Page sent a letter to Director Comey on September 25,

2016 (Compl. Exh. 9) following the initial world premiere of excerpts from the Dodgy Dossier in

the RFE Republication.  But no member of the IC or law enforcement gave him a chance to

inform them of the truth prior to the alleged approval of his illegitimate FISC warrant.[19]

---

[16]    These sole USG-sanctioned notifications included the RFE FISA Disclosure, the RFE
Republication and the RFE Pre-Election Report, Compl. ¶ 3-4.  But Dr. Page still to this
moment, 482 days later, has never been officially informed of any proposed action with the
exception of the extraordinary amount of deceptive news stories.  A series of illegal leaks
concerning his alleged FISA warrant to the press added to this damage.  See 18 U.S.C. § 798.
[17]    Devlin Barrett, "FBI has questioned Trump campaign adviser Carter Page at length in Russia
probe," *Washington Post,* June 26, 2017. https://www.washingtonpost.com/world/national-
security/fbi-has-questioned-trump-campaign-adviser-carter-page-at-length-in-russia-
probe/2017/06/26/1a271dcc-5aa5-11e7-a9f6-7c3296387341_story.html
[18]    "FBI Reportedly Monitored Trump Campaign Adviser For Russia Contacts," Radio Free
Europe / Radio Liberty, April 12, 2017. https://www.rferl.org/a/fbi-monitored-trump-campaign-
adviser-russia-contacts-washington-post-reported/28424682.html
[19]    As noted in Dr. Page's final paragraph: "I would eagerly await [FBI agents'] call to discuss
any final questions they might possibly have in the interest of helping them put these outrageous
allegations to rest while allowing each of us to shift our attention to relevant matters."  See Id.
The FBI agents who eventually approached him over five months later had a copy, but he was
denied the opportunity to properly defend himself in the FISC against the prior and forthcoming
state-sponsored public relations attacks including secret surveillance tactics allegedly employed
by the USG prior to the start of their alleged domestic political intelligence operation.  BBG's
cutout RFE subsequently persisted in publishing additional related articles that further increased
the American public's and the world's knowledge that this continued abuse of process had
occurred. [See "Russian Officials Discussed Influencing Trump Campaign Advisers: Report,"
Radio Free Europe / Radio Liberty, May 25, 2017. https://www.rferl.org/a/russian-officials-
discussed-influencing-trump-campaign-advisers-new-york-times-cnn-report/28507804.html ] While
BBG's grantee RFE distributed multiple libelous reports via their propaganda network before the
election in 2016, it was around the same time as this defamatory USG-sponsored propaganda
campaign that the illegitimate FISA warrants against Dr. Page were allegedly approved.

4.      ***Right to present evidence, including the right to call witnesses.*** According to multiple

press reports, only party loyalists and consultants of the Democratic National Committee were

allowed the opportunity to indirectly or directly present evidence to the FISC in 2016.[20]

5.      ***Right to know opposing evidence.*** Dr. Page has never been presented basis for the

civil rights abuses committed against him in 2016 and the false evidence allegedly submitted to

the FISC prior to that Court's approval, with the exception of what current or former employees

of the USG have continued to leak to the press in the wake of such potential campaign-

government "collusion", under the dark cloud of secrecy, as distributed by BBG's grantee.  See

Compl. Exh. 9; RFE FISA Disclosure; 18 U.S.C. § 798; Rule 13, U.S. Foreign Intelligence

Surveillance Court Rules of Procedure.

6.      ***Right to cross-examine adverse witnesses.*** Mr. Steele, his funders and the libelous

information sources who supported his Dodgy Dossier have continued to avoid questioning

related to the false evidence that was allegedly submitted to the FISC.[21]  Based on media

accounts and in the wake of the BBG-funded propaganda campaign against Dr. Page as the only

Article II agency or affiliate that has publicly acknowledged the pre-election existence of this

---

[20]   This allegedly included calling as a witness, either directly or indirectly via related meetings
with the FBI, Mr. Steele.  It has been reported that $50,000 was offered by the USG to this
transnational opposition political research operative.  See Matt Apuzzo, Michael S. Schmidt,
Adam Goldman and Eric Lichtblau, "Comey Tried to Shield the F.B.I. From Politics. Then He
Shaped an Election." *New York Times,* April 22, 2017.
[https://www.nytimes.com/2017/04/22/us/politics/james-comey-election.html]  Chuck Ross, "Here's
How Much The FBI Planned To Pay Trump Dossier Author," Chuck Ross, Daily Caller, April
22, 2017. [http://dailycaller.com/2017/04/22/heres-how-much-the-fbi-planned-to-pay-trump-dossier-author/]
The eventual disclosure of Dr. Page's illegitimate FISA warrant application should include the
evidentiary basis upon which these civil rights abuses were committed around the time of the
defamatory USG propaganda reports.  At that time, more details surrounding the misinformation
campaign by RFE, its grantor BBG, and other agencies of the USG will become known.
[21]   Mollie Hemingway, "Federal Judge Obliterates Fusion GPS' Attempt To Hide Info From
Investigators," Federalist, January 5, 2018.  http://thefederalist.com/2018/01/05/federal-judge-
obliterates-fusion-gps-attempt-to-hide-info-from-investigators/

false evidence on the record and the abuses of process around the same time, apparently the FISC may have effectively deferred to USG officials in 2016 and might not have honored due process principles with respect to the cross-examination of adverse witnesses such as him or any other known supporter of the Trump Movement.  See the RFE FISA Disclosure, the RFE Republication and the RFE Pre-Election Report.

7.        ***Decision based exclusively on the evidence presented.*** Of enormous historic relevance, there have been multiple reports based on illegal leaks that part of the evidence provided to the FISC, and distributed to the American electorate and worldwide by BBG's grantee RFE related directly to the 2016 Dodgy Dossier.  18 U.S.C. § 798.  None of the many serious allegations in that illegitimate document assembled by the opposition political research consultant Mr. Steele that relates to Dr. Page is accurate in any way.  But this has not prevented the severe damage from that false evidence which has continued for over a year, including domestic terrorist threats.  Similar to BBG's frequently demonstrated failure to provide sufficient oversight of its grantee RFE[22], the false propaganda they enabled on behalf of the IC in 2016 was allegedly not subject to sufficient oversight or due process over the time since either.

8.        ***Opportunity to be represented by counsel.*** None of the lawyers that have represented Dr. Page on other matters related to the Witch Hunt (Compl. ¶ 63-64) were ever afforded such an opportunity to participate in the illegitimate FISC proceedings in any way, particularly as limited information has been made available to the U.S. Congress or the American public.  Neither they nor Dr. Page have even been officially notified about these completely unjustified FISA warrant

---

[22]    For example: "OIG has reported in a number of audits and inspections that BBG does not have sufficient oversight of the three grantees it funds through annual agreements: Radio Free Europe/Radio Liberty (RFE/RL)…" See: Office of Inspector General, U.S. Department of State, "Management Alert: Broadcasting Board of Governors Significant Management Weaknesses (MA-15-01)," State Department OIG Website, May 19, 2015. https://oig.state.gov/system/files/ma-15-01.pdf  Compl. ¶ 133-135.

processes instigated prior to the 2016 election, allegedly based on false evidence, with the

exception of the extensive illegal leaks to the press including the RFE FISA Disclosure. See 18

U.S.C. § 798.

9.      ***Requirement that the tribunal prepare a record of the evidence presented.*** The only

known indirect USG-sponsored record of the false evidence presented to the American electorate

was that broadcast by BBG's grantee RFE and "used to influence public opinion in the U.S." in

violation of 22 U.S.C. § 1461–1a(a).

10.     ***Requirement that the tribunal prepare written findings of fact and reasons for its***

***decision.*** The only USG-funded cutout that has disclosed fictitious written findings related to his

FISC warrant was RFE under the sponsorship of BBG.  It remains unclear whether the

misinformation broadcast by BBG's grantee RFE bears resemblance to the warrant applications

presented to the FISC, but leaks to many news agencies have indicated that this may be the case.

See RFE FISA Disclosure and RFE Republication.

     In summary, each of these due process abuses, supra, illustrate why the protections of law

"shall apply to any claim arising… out of… abuse of process" with respect to applicable

sovereign immunity exceptions of this case.  28 U.S.C. § 2680(h).  While transparency regarding

the USG's related crimes remains limited, the higher threshold for alleged American citizen

"agents" align with the false claims in the Dodgy Dossier as illegally referenced in the RFE

Republication may be expected to have further exacerbated these abuses. 50 U.S.C. § 1801(b)(2).

**III.   PROPERLY STATED CLAIMS**
   **A.  BBG played the essential role in enabling RFE's illegal actions**
      **1.  A duplicitous "Cutout" in illicit election influence campaign**

The analysis of state-sponsored propaganda networks included in the DNI Report of January

6, 2017,[23] described the structure and composition of government influence operations that have

potential to damage U.S. political campaigns as: "…multifaceted and designed to be deniable

because they use a mix of agents of influence, cutouts, front organizations, and false-flag

operations". See Compl. ¶ 138-142.  While each of these characteristics have been clearly

reflected in the USG's torts committed against Dr. Page and began prior to the 2016 election

amidst the highly damaging misinformation campaign funded by BBG and executed by RFE as

outlined in the Compl., these tortious agents of influence, cutouts, front organizations, and false-

flag operations have in parallel demonstrably created multiple additional legal bases for this case.

The legal organization of RFE, and BBG which "shall make all major policy determinations

governing the operation of RFE/RL", reflect significant structural comparability to the schemes

described in the DNI Report. See 22 U.S.C. § 6207; 22 U.S.C. § 6213; 18 U.S.C. § 1346.

Despite the USG's partial legal cover of the front organization BBG, associated statutes

explicitly offer several relevant bases for resolving any ineffectiveness and incompetence

demonstrated by their grantee RFE as observed in 2016.  For example, see 22 U.S.C. § 6207(d):

> "If the Chief Executive Officer determines at any time that RFE/RL, Incorporated is
> not carrying out the functions described in this section in an effective and economical
> manner, the Board may award the grant to carry out such functions to another entity."

Without question, the completely ineffective, uneconomical and illicit steps RFE took to

influence the 2016 election through their reckless defamation of Dr. Page and the damage their

principal funding source BBG underwrote leading up to the final months prior to November 8,

2016 in accordance with their "major policy determinations" (22 U.S.C. § 6207) require a more

effective and economical manner of resolving the severe abuses and misinformation campaigns

---

[23]   https://www.dni.gov/files/documents/ICA_2017_01.pdf

seen in these torts. This civil action will take essential steps in belatedly resolving the blatant exploitations of many of the fundamental legal bases upon which these federal agencies were founded and have been operated by the USG throughout most of their respective histories prior to their troubled reorganization plan of 2013.  See NDAA 2013.

   "The very notion of law is that known, or at least knowable, rules govern the conduct and affairs of those subject to the law's reach."  See *Ralis v. RFE/RL, Inc.*, 770 F.2d 1121, 1131 (D.C. Cir. 1985).  Many fundamental tenets of the known rules governing the conduct and affairs of BBG and RFE throughout their histories were fundamentally altered in the NDAA 2013, now allowing USG propaganda to reach American citizens in the domestic audience.[24]  The 2016 election marked the first time these revised organizational structures and legal tenets were tested amidst a U.S. Presidential contest.  This subjected Dr. Page, a "citizen of the United States… to the deprivation of… rights… secured by the Constitution and laws". 42 U.S.C. § 1983. The lack of clarity surrounding the law as illustrated in the politically-motivated, defamatory USG-sponsored articles about Dr. Page amidst this first U.S. Presidential election following the enactment of the NDAA 2013 will be further resolved with the forthcoming proceedings in this case.

   According to a report regarding the alleged activities of two Facebook accounts before the 2016 election: "Facebook removed the 470 accounts last month for violating its policy prohibiting accounts from misrepresenting their origin." [25]  Over one year after the dissemination

---

[24]   John Hudson, "U.S. Repeals Propaganda Ban, Spreads Government-Made News to Americans, *Foreign Policy,* July 14, 2013.  http://foreignpolicy.com/2013/07/14/u-s-repeals-propaganda-ban-spreads-government-made-news-to-americans/
[25]   Georgia Wells and Deepa Seetharaman, "Facebook Users Were Unwitting Targets of Russia-Backed Scheme," *Wall Street Journal,* October 13, 2017.
https://www.wsj.com/articles/facebook-users-were-unwitting-targets-of-russia-backed-scheme-1507918659

of the RFE Republication, the defamatory article about Dr. Page has still not been removed from the internet despite the clear violation of BBG and RFE policy with the misrepresentation of the core origins of the false story as they particularly relate to the Dodgy Dossier.  As a current related topic of consideration now before multiple Congressional committees, such activities of global social media networks that may have influenced the 2016 election have remained under review.  In most instances, "The threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings." See *Twombly*, 550 U.S. at 599.[26] The many millions of dollars currently being spent by DOJ, other Article II institutions, SSCI and other entities in Congress to get to the bottom of what actually happened with the Dodgy Dossier and government influence on the 2016 election will dramatically decrease the discovery expenses for each of the respective parties in this landmark civil action.

**2. The BBG Board had vested interests and clear conflicts in 2016**

Jeffrey Shell ("Mr. Shell"), a senior executive at Comcast subsidiary NBCUniversal,[27] served as Chairman of the BBG from August 1, 2013 until January 25, 2017.[28] (Compl. ¶ 12).  During Mr. Shell's term, blatant exploitations of many of the fundamental legal bases upon which these federal propaganda agencies were founded arose with NDAA 2013.[29]  U.S. Under Secretary of State for Public Diplomacy and Public Affairs Richard Stengel ("Mr. Stengel") joined NBCUniversal subsidiary MSNBC as a "Political analyst" after leaving office on December 7,

---

[26]   As cited in Samuel Issacharoff and Geoffrey Miller, "An Information-Forcing Approach to the Motion to Dismiss," 5 *Journal of Legal Analysis*, 437, 466 (2013), 442.

[27]   https://www.universalpictures.com/leadership-team/jeff-shell

[28]   https://www.bbg.gov/who-we-are/our-leadership/board/jeff-shell/

[29]   Based on clear warning signs including the May 2015 report addressed to Mr. Shell from the U.S. Department of State's Office of Inspector General ("OIG") entitled "Management Alert: Broadcasting Board of Governors Significant Management Weaknesses", he was clearly aware of the capacity for the severe offenses between September 2016 and the Presidential election. (Compl. ¶ 134-135).

2016.[30]  Mr. Shell and Mr. Stengel met at least once, in a "Closed Meeting" in September 2016,[31]

shortly before the start of BBG and RFE's libelous disinformation campaign against Dr. Page.  A

representative of Oath also made these defamatory allegations on MSNBC on September 24,

2016.  (Compl. ¶ 60-61).  18 U.S.C. § 1346.

## B. Defamation: A primary alleged cause of the abuse of process in the FISC
As similarly noted in *Condit v. Dunne*, 317 F. Supp. 2d 344 (S.D.N.Y. 2004):

> Defendant's argument rests on a misstatement of the law of defamation. First, a speaker who
> republishes the accusations of others is not immune from a defamation action. *Ringler*, 80
> Cal.App. 4th at 1180, 96 Cal.Rptr.2d 136 ("Reprinting or recirculating a libelous writing has
> the same effect as the original publication."); *Flowers v. Carville*, 310 F.3d 1118, 1128 (9th
> Cir.2002) (relying on "the venerable principle that a person who repeats a defamatory
> statement is generally as liable as the one who first utters") (collecting authorities). The
> reason for this rule is that republication of false facts threatens the target's reputation as much
> as does the original publication. See *Flowers*, 310 F.3d at 1128. The republisher, moreover,
> may be liable for republishing the false statements of others even if the republisher discloses
> the identity of the source of the statements. *Flowers*, 310 F.3d at 1128 ("'Every repetition of
> the defamation is a publication in itself, even though the repeater states the source, or resorts
> to the customary newspaper evasion "it is alleged."'" (quoting *Prosser and Keeton on the Law
> of Torts* § 113, at 799 (5th ed.1984))); *Cianci v. New Times Publishing Co.*, 639 F.2d 54, 60-
> 61 (2d Cir.1980) (Friendly, J.) (relying on the "widely recognized" "black-letter rule that one
> who republishes a libel is subject to liability just as if he had published it originally, even
> though he attributes the libelous statement to the original publisher, and even though he
> expressly disavows the truth of the statement" (internal quotations omitted)).

As seen throughout the Compl., the diversity of the USG's torts also fulfills all four

principles of cruel and unusual punishment.  *Furman v. Georgia*, 408 U.S. 238 (1972).

## C. Terrorism
The readily apparent torts of the initial Compl. have grown more obvious over the months

since filing this civil action.  The domestic terror threats instigated by the Defendants stand as a

prominent example.  In recent weeks, Chairman of the U.S. Senate Judiciary Subcommittee on

Crime and Terrorism Lindsey Graham has been quoted as saying:

> "I've spent some time in the last couple of days, after a lot of fighting with the Department of
> Justice, to get the background on the dossier, and here's what I can tell your viewers: I'm very

---

[30]  https://twitter.com/stengel
[31]  https://www.bbg.gov/wp-content/media/2016/09/Closed-Meeting-Notice-9-9-2016.pdf

disturbed about what the Department of Justice did with this dossier, and we need a special counsel to look into that, because that's not in Mueller's charter. And what I saw, and what I've gathered in the last couple of days, bothers me a lot, and I'd like somebody outside DOJ to look into how this dossier was handled and what they did with it…I've been a lawyer most of my life, a prosecutor, and a defense attorney… And the one thing I can say, every prosecutor has a duty to the court to disclose things that are relevant to the request. So any time a document is used to go to court, for legal reasons, I think the Department of Justice owes it to the court to be up-and-up about exactly what this document is about, who paid for it, who's involved, what their motives might be. And I can just say this: After having looked at the history of the dossier, and how it was used by the Department of Justice, I'm really very concerned, and this cannot be the new normal."[32]

Dr. Page was the target of terrorist threats as a result of the USG's torts.  But he was not even afforded equivalent due process standards approved by courts for alleged terrorists.[33]

A six-part test has been suggested for the legal analysis of whether an action "taken against a civilian target population constitutes domestic terrorism".[34]  A historically unprecedented state-sponsored propaganda campaign was waged by the USG against Dr. Page and the Trump Campaign in the midst of the 2016 U.S. election following Congress's recent authorization of BBG propaganda for the domestic audience with the NDAA 2013. Common law has not been entirely clear on these types of emerging threats to American democracy that he was the first to suffer amidst these torts of 2016.  But on the basis of this framework (the "Enzweiler Test"), the state-sponsored torts committed against Dr. Page clearly meets each of these six elements.

While most other standards of the Enzweiler Test stem from the definition of domestic terrorism set by 18 U.S.C. § 2331(5), the initial elements relates to whether the actions "seek to

---

[32]   Byron York, "Lindsey Graham: We need new special counsel — just for Trump dossier," *Washington Examiner,* December 30, 2017. http://www.washingtonexaminer.com/lindsey-graham-we-need-new-special-counsel-just-for-trump-dossier/article/2644632

[33]   *Hamdi v. Rumsfeld,* 542 U.S. 507 (2004): "due process demands that a citizen held in the United States as an enemy combatant be given a meaningful opportunity to contest the factual basis for that detention before a neutral decision maker."

[34]   Matthew James Enzweiler, "Swatting Political Discourse: A Domestic Terrorism Threat," *Notre Dame Law Review,* Vol. 90, Issue 5 (May 2015), pp. 2001-2038.

advance a political or social agenda".[35]  This first part of the Enzweiler Test for domestic

terrorism is based in part on a 1995 RAND Corporation study written for DOJ that correctly

noted: "It is this political element that distinguishes economically motivated crimes from

politically motivated (i.e., terrorist) violence."[36]  For each of the Defendants, the facts in this case

demonstrate clear political motivations.  For example, see Compl. ¶ 12, 30-32, 131, et al.

Other evidence has recently arisen regarding politically-motivated leaks to the media by FBI

officials during the time of the defamatory propaganda articles by BBG and RFE.[37]

The multiple death threats Dr. Page has received both telephonically and via the internet

involving acts dangerous to human life that stemmed directly from the libelous reports by BBG's

grantee RFE in conjunction with private U.S. media institutions whose activities were duplicated

by the USG's propaganda initiatives have frequently violated the laws of the U.S. on many

levels.  For example, "United States international broadcasting shall… not duplicate the activities

of private United States broadcasters [and]… be conducted in accordance with the highest

professional standards of broadcast journalism…" See Compl. ¶ 84-85; 22 U.S.C. § 6202.

Each of the remaining five elements of the six-part Enzweiler Test stemming from the

statutory definition have also been met.[38]  Whereas BBG's grantee RFE broadcast the

defamatory RFE Republication and RFE Pre-Election Report nationwide to all fifty states amidst

---

[35]  Id.

[36]  K. Jack Riley, and Bruce Hoffman, "Domestic Terrorism: A National Assessment of State and Local Law Enforcement Preparedness," RAND Corporation, 1995, p. 2.

[37]  John Solomon, "FBI agents' text messages spur congressional probe into possible news leaks," *The Hill*, January 8, 2018.  http://thehill.com/homenews/house/368003-fbi-agents-text-messages-spur-congressional-probe-into-possible-news-leaks

[38]  "Domestic terrorism means activities that involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State" and "appear to be intended…to intimidate or coerce a civilian population… to influence the policy of a government by intimidation or coercion; or… to affect the conduct of a government by mass destruction, assassination, or kidnapping; and… occur primarily within the territorial jurisdiction of the United States." See 18 U.S.C. § 2331(5).

this first Presidential election in which domestic propaganda had been authorized by Congress, this libel and other acts may also violate the criminal laws of many states.[39]

A U.K. intelligence organization allegedly participated in the wiretap and hack by the USG-organized domestic political intelligence operation against Dr. Page, as illegally authorized in the FISC.[40] The U.K. IC accurately described links between political media operations such as those conducted by BBG's grantee RFE in conjunction with Oath media brands and the essential impact they can have on terrorist operations as further demonstrated in the facts of this case:

> "The recently tapped head of Government Communications Headquarters (GCHQ), the United Kingdom's electronic surveillance arm, publicly castigated American social media platforms for serving as 'the command-and-control networks of choice for terrorists and criminals, who find their services as transformational as the rest of us.'"[41]

---

[39]   "In the First Amendment context, for example, '[m]ore than forty State Constitutions, while extending broad protections to speech and press, reserve a responsibility for their abuse and implicitly or explicitly recognize validity of criminal libel laws.' *Beauharnais v. Illinois*, 343 U.S. 250, 292 (1952) (Jackson, J., dissenting)." Cited in "Notes. Rights in Flux: Nonconsequentialism, Consequentialism, and the Judicial Role," *Harvard Law Review,* Vol. 130, Issue 5 (March 2017), (pp. 1436-1457), p. 1441.

[40]   Charles E. Grassley, "Grassley Presses FBI on Use of Foreign Intelligence in Russia Investigation and Whether Steele Was Underlying Source," Senator Grassley News Release website, October 6, 2017.  https://www.grassley.senate.gov/news/news-releases/grassley-presses-fbi-use-foreign-intelligence-russia-investigation-and-whether
…In court filings by Mr. Steele's attorneys in London, he admitted that he had passed at least some contents of the dossier to at least one foreign government – the United Kingdom…

Media reports have also claimed that foreign governments passed along information to the United States about purported contacts between Trump associates and Russians.  Given that Mr. Steele also distributed the dossier's contents to at least one foreign government, it is possible that this political dossier's collusion allegations, or related allegations originating via Mr. Steele, may have also been surreptitiously funneled into U.S. intelligence streams through foreign intelligence sharing.  If so, that foreign information would likely have ended up within the FBI's investigation of allegations of collusion between Trump associates and Russia.  However, given that foreign intelligence agencies carefully guard their sources and methods, it may not have been clear to the FBI that the foreign reporting was actually based on the work of Mr. Steele and Fusion GPS.

If this in fact happened, it would be alarming.  Mr. Steele's dossier allegations might appear to be "confirmed" by foreign intelligence, rather than just an echo of the same "research" that Fusion bought from Steele and that the FBI reportedly also attempted to buy from Steele…

[41]   Samuel J. Rascoff, "Presidential Intelligence," *Harvard Law Review*, Vol. 129, Issue 3 (January 2016), pp. 633-717.

Furthering their fraudulent public-private internet marketing schemes, each of the libelous 2016 reports by BBG's grantee RFE included links to "Share" the defamatory USG-sponsored propaganda reports via Facebook, Twitter, the Russian social media platform VKontakte and Google Plus.[42]  18 U.S.C. § 1346.

As noted in the decision and order of *Roth v. Farmingdale Pub. Sch. Dist.*, No. 14-CV-6668 (JFB) (ARL) (E.D.N.Y. 2017):

> "Freedom of speech, however, is not an unfettered right for any U.S. citizen. Speech that constitutes a true threat of violence, by being a 'serious expression of an intent to cause present or future harm,' may be prohibited." *D. F. ex rel. Finkle v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 386 F. Supp. 2d 119, 125 (E.D.N.Y. 2005) (quoting *Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 616 (5th Cir. 2004)), aff'd sub nom. *D.F. v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 180 F. App'x 232 (2d Cir. 2006). This prohibition is intended to 'protect[] individuals from the fear of violence, the disruption that fear engenders, and the possibility that the threatened violence will occur.' *R.A.V. v. City of St. Paul, Minn.*, 505 U. S. Reports 377, 388 (1992). Thus, '[t]he speaker need not actually intend to carry out the threat.' *Virginia v. Black*, 538 U. S. Reports 343, 359-60 (2003)."

As evidence would subsequently prove, the RFE Republication's and the 2016 Yahoo Report's false labeling of Dr. Page as the preeminent U.S. accomplice of one of the most high-profile alleged crimes in recent history based on the Dodgy Dossier in September 2016 demonstrably inspired a verifiably true threat of violence nationwide.  Throughout the following years and in the wake of multiple physical threats, Dr. Page has understandably lived with the fear of violence, the disruption that fear engenders, and the possibility that the threatened violence will occur, based in significant part on the BBG-sponsored defamatory news stories published by RFE.

According to one early legal analysis of the NDAA 2013 authorizing the fundamental restructuring of BBG and RFE's joint operating patterns: "The bill's supporters argued that the

---

[42]   For example, the upper left-hand corner of the RFE Republication webpage includes links to each of these four respective sites.

removal of the domestic prohibition would enhance government transparency, bolster strategic communications and public diplomacy, and help to counter the radical messages and undermine the recruitment abilities of terrorist groups online."[43]  Precisely the opposite occurred with BBG's state-sponsored misinformation campaign regarding Dr. Page, based on their radical messages they distributed and helped inspire the recruitment of prospective terrorists online.

In a swatting case announced two days after the release of the full Dodgy in January 2017, then-U.S. Attorney Mr. Rosenstein said: "We are working with officials in the United Kingdom to insure that Robert Walker McDaid is held accountable for his alleged actions because the alleged criminal activity represents a grave threat to public safety."[44]  The relatively negligible law enforcement costs associated with this swatting incident involving "40 officers" who remained at the scene of the incident "for over 2.5 hours" and cost a local police department "over $10,000"[45] are clearly miniscule when compared to the baseless, politically-motivated investigation of Dr. Page.

**D. Tortious Interference: Among alleged effects of abuse of process in the FISC**
As is the case for libel, statutory exemptions also explicitly exist for sovereign immunity related to USG torts arising out of "interference with contract rights" which "…shall apply to any claim arising… out of… abuse of process".  See 28 U.S.C. § 2680(h).  While the libelous false information campaign against Dr. Page is now widely believed to have been a primary cause of the abuse of process in the FISC, the tortious interference was a blatantly obvious effect of the USG's illegitimate surveillance warrant against him.  In addition to the devastating

---

[43]   Ariel Victoria Lieberman, "Terrorism, the Internet, and Propaganda: A Deadly Combination," *Journal of National Security Law and Policy*, Vol. 9, Issue 1 (2017), pp. 95-124.
[44]   "British and American Men Indicted for 'Swatting'," U.S. Department of Justice, January 12, 2017.  https://www.justice.gov/usao-md/pr/british-and-american-men-indicted-swatting
[45]   "Catonsville Man Pleads Guilty To Conspiracy In 'Swatting' Incident," U.S. Department of Justice, November 7, 2017. https://www.justice.gov/usao-md/pr/catonsville-man-pleads-guilty-conspiracy-swatting-incident

personal impact inflicted by the Media Massacre Tactics employed by each of the Defendants (Compl. ¶ 84-86), an easily understandable reluctance among most of Dr. Page's past, current and future business contacts to continue any relationship under the threat of illegitimate wiretapping immediately resulted as another aftermath of these torts (Compl. ¶ 179-185).

The mass hysteria created in the U.S. and international press in the wake of the USG's historic false flag operation regarding Dr. Page may have had a material impact on the Trump Campaign if the falsehoods of the 2016 Yahoo Report and the RFE Republication had been fully accepted as true by voters. The now widely understood, extensive facts presented in the Compl. and additional details regarding the FISC warrants that have continued to be exposed already extend far beyond mere threadbare recitals.[46]

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court also held that, "…to state a claim based on a violation of a clearly established right, respondent must plead sufficient factual matter to show that petitioners adopted and implemented… policies at issue not for a neutral, investigative reason but for the purpose of discriminating…" *Id.* The ever-increasing amount of factual evidence that has continued to become available through ongoing legal and illegal disclosures, 18 U.S.C. § 798, have shown a clear pattern of discrimination and related illicit activities by the USG in 2016[47], particularly against Dr. Page as an unpaid, informal supporter of the Trump Movement.

Related analyses released by the FBI have warned of the danger of such hoaxes: "The individuals who engage in this activity use technology to make it appear that the emergency call

---

[46]   "Grassley, Graham Seek Surveillance Applications in Russia Probe," Website of Senator Chuck Grassley, June 28, 2017.  https://www.grassley.senate.gov/news/news-releases/grassley-graham-seek-surveillance-applications-russia-probe
[47]   Chuck Ross, "FBI Confirms That Comey Drafted Statement On Clinton Probe Months Before Investigation Ended," Daily Caller, October 16, 2017. http://dailycaller.com/2017/10/16/fbi-confirms-that-comey-drafted-statement-on-clinton-probe-months-before-investigation-ended/

is coming from the victim's phone. Sometimes swatting is done for revenge, sometimes as a

prank. Either way, it is a serious crime, and one that has potentially dangerous consequences."[48]

Dr. Page similarly noted in his letter to Mr. Comey when he first raised these claims

administratively (28 U.S.C. § 2675, Memo. p. 8) on September 25, 2016 (Compl. Exh. 9) :

> "In bothering the Bureau with such repeated appeals, the parties who have requested my
> investigation clearly fail to appreciate the risks they create for America with these
> shenanigans.  Instead of allowing the staff of the FBI to focus the nation's limited resources
> on real threats, these desperate and unfounded calls for my investigation as a private citizen
> to advance political interests based on nothing more than preposterous mainstream media
> reports is a true disgrace."

## IV.    MORE ACTUAL MALICE IN DOJ'S PLEADING ON BEHALF OF BBG

As the USG once wrote to Martin Luther King, Ph.D. during the era of its similar unjustified

surveillance of him[49], in part as retribution for his analogous personal support for peace and

justice (Compl. ¶ 100, 102):

> "King,
> In view of your low grade, abnormal personal behavior I will not dignify your name with
> either a Mr. or a Reverend or a Dr…"[50]
> (the "FBI MLK Letter")

Consistent with accepted civil practice for referring to individuals, Article I institutions have

demonstrated basic levels of common decency toward Dr. Page, particularly after the "low grade,

abnormal personal behavior" falsely alleged in the Dodgy Dossier as originally co-distributed by

---

[48]    "The Crime of 'Swatting': Fake 9-1-1 Calls Have Real Consequences," FBI website,
September 3, 2013. https://www.fbi.gov/news/stories/the-crime-of-swatting-fake-9-1-1-calls-have-real-consequences1
[49]    Jarrett Murphy, "Read the FBI Report on Its Spying Campaign Against MLK," City Limits,
January 15, 2018. https://citylimits.org/2018/01/15/read-the-fbi-report-on-its-spying-campaign-against-mlk/
[50]    Sam Sanders, "FBI's Vicious Letter To King Holds Lessons On Surveillance, Hindsight,"
NPR, November 13, 2014.  https://www.npr.org/sections/thetwo-way/2014/11/13/363899210/fbis-vicious-letter-to-king-holds-lessons-on-surveillance-hindsight

BBG's grantee RFE has been initially exposed and debunked.[51]  Yet in many ways consistent

with the FBI MLK Letter, the DOJ has displayed comparable indignity through these historic

torts as once again seen most recently in its Memo.[52] In consideration of this Defendant's failure

to deny the related abuse of process claims previously explained [Fed. R. Civ. P. 8(b)(6)] and as

summarized in Dkt. No. 24, the Pro Se Plaintiff respectfully requests that the Court takes the

USG's stance into account in the interest of helping to encourage more "just, speedy, and

inexpensive" proceedings in the future. [Fed. R. Civ. P. 1][53]

## V.    CONCLUSION

Based on the foregoing, Pro Se Plaintiff Dr. Page respectfully requests that this Court deny

Defendant's Motion to Dismiss Plaintiff's Complaint. In the alternative, Pro Se Plaintiff requests

that the Court grant him leave to amend his Complaint to address any deficiencies identified by

the Court, and any other relief this Court deems just and proper.

Dated: New York, New York
       January 19, 2018

Very respectfully,

By:  /s/ Carter Page
Carter Page
c/o Global Energy Capital LLC
590 Madison Ave., 21st floor
New York, NY 10022
Phone (212) 537-9261
Fax    (212) 537-9281
cpage@globalenergycap.com

---

[51]    As an example from this week: "The Majority has released transcripts of Dr. Page…" See
Eric Garcia, "Schiff Wants Fusion GPS Transcript Released," Roll Call, January 16, 2018.
https://www.rollcall.com/news/politics/schiff-wants-fusion-gps-transcript-released
[52]    "…in proper cases and under proper instructions the jury may infer malice from the fact that
a defendant repeats the defamatory matter, which is later found to be false.  But here answers
were served on behalf of each defendant, which not only repeated but elaborated upon the
matters set forth in the original defamatory publication…" *Reynolds v. Pegler*, 223 F.2d 429 (2nd
Cir.), *cert. denied*, 350 U.S. 846 (1955).
[53]    See also Robert K. Vischer, *Martin Luther King Jr. and the Morality of Legal Practice:
Lessons in Love and Justice*, Cambridge: Cambridge University Press, 2012.