# GLOBAL ENERGY CAPITAL LLC

May 7, 2018

HAND-DELIVERED VIA PRO SE INTAKE UNIT
The Honorable Lorna G. Schofield
United States District Court, Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

Subject: 17-cv-6990, *Page v. Oath, Inc. ("Oath") and Broadcasting Board of Governors ("BBG")*, Clarifications regarding DOJ's letter on behalf of BBG [Dkt. No. 54]

Dear Judge Schofield:

    I am writing to help further elucidate a few facts following DOJ's most recent misleading court filing from Friday [Dkt. No. 54; "DOJ Letter"]. As just one example, in suggesting that I made "no attempt to specify how these investigations are remotely related to his specific claims against BBG" [*Id.*, p. 1], they have again completely disregarded the relationship between the USG's direct involvement in defamatory BBG-sponsored propaganda and associated abuse of process in the U.S. Foreign Intelligence Surveillance Court [28 U.S.C.A. § 2680(h)] which I have accurately pleaded on numerous occasions [e.g. Dkt. No. 42 and 52].

    Given space limitations and since my own words have been almost entirely disregarded [*Id.*], I have attached one recent example of direct links between the ongoing investigations and my specific claims [Exhibit 1: HPSCI Report, April 27, 2018, p. 143]. *Id.*, ¶ 2) and adjacent text explicitly demonstrate "the specific waiver of sovereign immunity that entitles him to proceed to discovery" [DOJ Letter, p. 1; as previously demonstrated in Dkt. No. 42 and 52]. Exhibit 1 also clearly highlights four of DOJ's prior opportunities "to accurately provide an accounting of the relevant facts" in another Article III federal district court which allegedly stem from the defamatory reports under consideration in this civil action and the direct relationship to abuse of process. In DOJ's latest attempt to urge dismissal of my valid claim, the USG has once again waived the opportunity to provide any accurate accounting of the relevant facts in an Article III Court.

    The DOJ Letter likewise ignored my previously stated plans to focus the Amended Compl. on merely Count 1 [Dkt. No. 51, ¶ II.b; Compl. ¶ 155-165] at this stage, thereby rendering moot much of Dkt. No. 54's latest discussion of the other 75% of my prior counts from September 2016 [For example, see DOJ Letter, p. 2: itemized points six, seven and eight].

    DOJ's pattern of indifference and/or deceitfulness admittedly creates obstacles for any Plaintiff, pro se or otherwise. In stark comparison, my pleadings have immeasurably exceeded the standard of "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Such facts make unmistakably clear that future legitimate proceedings in this case should help to finally resolve these continued inequities and delays.

Kind regards,

*[signature]*

Carter Page, Ph.D.

**EXHIBIT 1**

UNCLASSIFIED

application that is known by the government. In the case of Carter Page, the government had at least four independent opportunities before the FISC to accurately provide an accounting of the relevant facts. However, our findings indicate that, as described below, material and relevant information was omitted.

1) The "dossier" compiled by Christopher Steele (Steele dossier) on behalf of the Democratic National Committee (DNC) and the Hillary Clinton campaign formed an essential part of the Carter Page FISA application. Steele was a longtime FBI source who was paid over $160,000 by the DNC and Clinton campaign, via the law firm Perkins Coie and research firm Fusion GPS, to obtain derogatory information on Donald Trump's ties to Russia.

   a) Neither the initial application in October 2016, nor any of the renewals, disclose or reference the role of the DNC, Clinton campaign, or any party/campaign in funding Steele's efforts, even though the political origins of the Steele dossier were then known to senior DOJ and FBI officials.

   b) The initial FISA application notes Steele was working for a named U.S. person, but does not name Fusion GPS and principal Glenn Simpson, who was paid by a U.S. law firm (Perkins Coie) representing the DNC (even though it was known by DOJ at the time that political actors were involved with the Steele dossier). The application does not mention Steele was ultimately working on behalf of—and paid by—the DNC and Clinton campaign, or that the FBI had separately authorized payment to Steele for the same information.

2) The Carter Page FISA application also cited extensively a September 23, 2016, *Yahoo News* article by Michael Isikoff, which focuses on Page's July 2016 trip to Moscow. <u>This article does not corroborate the Steele dossier because it is derived from information leaked by Steele himself to *Yahoo News*.</u> The Page FISA application incorrectly assesses that Steele did not directly provide information to *Yahoo News*. Steele has admitted in British court filings that he met with *Yahoo News*—and several other outlets—in September 2016 at the direction of Fusion GPS. Perkins Coie was aware of Steele's initial media contacts because they hosted at least one meeting in Washington D.C. in 2016 with Steele and Fusion GPS where this matter was discussed.

   a) Steele was suspended and then terminated as an FBI source for what the FBI defines as the most serious of violations—an unauthorized disclosure to the media of his relationship with the FBI in an October 30, 2016, *Mother Jones* article by David Corn. Steele should have been terminated for his previous undisclosed contacts with Yahoo and other outlets in September—before the Page application was submitted to

UNCLASSIFIED